**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MATTHEW BABKIRK,<br>*Plaintiff*,<br><br>v.<br><br>PAROLE OFFICER BRIAN NORTON, et al.,<br>*Defendants.* | No. 3:25-cv-1681 (OAW) |

## INITIAL REVIEW ORDER

Self-represented plaintiff, Matthew Babkirk, filed this action against Parole Officer Brian Norton, Parole Supervisor Brian Plourd, Project More, Inc., the Board of Pardons and Paroles ("BOPP"), twenty John Does, and the Department of Correction ("DOC"). ECF No. 1. Prior to this initial review order, Plaintiff amended his complaint twice. *See* ECF Nos. 10, 14-1. And when the court granted Plaintiff's motion for leave to amend, ECF No. 17, Plaintiff's Amended Complaint at ECF No. 14-1 became the operative complaint. In it, Plaintiff names the following defendants: DOC, BOPP, Hartford Correctional Center ("HCC") and its Correction and Transport Officers; Eddy Center and its Director, Staff, and Administration;[1] Community Solutions, Inc.; Project More, Inc.;[2] Walter Brooks House and its Director, Staff, and Administration; Chase Center and its

---

[1] Eddy Center is a halfway house operated by the Connection, Inc. https://www.theconnectioninc.org/?s=eddy+center. Information on the website for the Connection describes Eddy Center as "[a] transitional 24-hour program that supports adult men who are under the supervision of the Department of Correction. The program provides case management services and employment readiness support while facilitating access to community-based resources for clinical treatment, continuing education and formal vocational training opportunities."

[2] Project More, Inc. operates Walter Brooks House. *See* https://projectmore.org/ct-programs.

Administration, Director, and Staff; Chase Center Directors Walter Brooks and Luis Rodriguez; Chase Center Case Managers Karen Green-Hubbard and Kaylee Papapietro, Parole Officers Norton, Parole Supervisor Plourd, and John and Jane Does 1–20, who are staff, employees or agents of all entity defendants. *See* ECF No. 14-1, at 1–3.[3] Plaintiff seeks damages, declaratory relief, and injunctive relief and sues each individual defendant in their individual and official capacities. *Id.* at 1, 33.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

Upon thorough initial review, pursuant to 28 U.S.C. §1915A, of the allegations[4] in the Amended Complaint, ECF No. 14-1, the following claims survive: Plaintiff's Eighth

---

[3] The parties included in Plaintiff's case caption differ from those in his list of parties. For example, his list of parties does not include Eddy Center or Hartford Correctional Center, and indicates Walter Brooks is a Director of Administration for Chase Center. *See* ECF No. 14-1, at 1–3. The court construes John Doe Defendants to encompass the staff, administration and directors for Eddy Center, Walter Brooks House, and HCC referenced in Plaintiff's case caption.

[4] Plaintiff asserts state law claims of negligence, emotional distress, and violation of the Connecticut Constitution. In this initial review under 28 U.S.C. § 1915A, the court only considers whether Plaintiff states any plausible claims under 42 U.S.C. § 1983. That is because the core purpose of an initial review order is to make an initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, a court's determination for purposes of initial review that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

Amendment deliberate indifference claim against Parole Officer Norton and Parole Supervisor Plourd in their individual capacities for damages; his Title II ADA violation under a reasonable accommodation theory against the DOC, BOPP, Parole Officer Norton, and Parole Supervisor Plourd in their official capacities for damages; and his Rehabilitation Act violation under a reasonable accommodation theory against DOC, BOPP, Community Solutions, Inc., Project More, Inc., Eddy Center, Walter Brooks House, and Chase Center (or the relevant parent agency) for damages. All other claims are dismissed.

## I. BACKGROUND

The court only summarizes those allegations from the Amended Complaint necessary to provide context for its initial review.

Publicly available information on the DOC website shows Plaintiff on special parole under the supervision of the Board of Pardons and Paroles ("BOPP"),[5] an office of the Department of Correction ("DOC").[6] *See also* ECF No. 14-1, ¶¶ 4, 18.

Plaintiff has significant mobility issues requiring that he use a power wheelchair. ECF No. 14-1, ¶ 4.

---

[5] The court takes judicial notice that Plaintiff is on special parole until December 27, 2026. https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=301288 (last visited Oct. 28, 2026). Special parole is a form of supervision which can be ordered by a sentencing judge to follow a term of imprisonment greater than two years in length. *See* Conn. Gen. Stat. § 54-125e. Plaintiff is currently housed at Chelsea Place Care Center, a skilled nursing care center located in Hartford, Connecticut. *See* Address Confirmation, ECF No. 22.

[6] *See Young v. Parole Officer Pearson*, No. 3:24CV1028 (OAW), 2025 WL 3041800, at *1 (D. Conn. Oct. 31, 2025).

Prior to June 30, 2025, Plaintiff's mother contacted Parole Officer Norton and Parole Supervisor Plourd to advise them that Plaintiff is "wheelchair-bound" and requires ADA-compliant housing and proper wheelchair transportation services upon his release. *Id.* ¶ 20. Officer Norton responded: "We will see about that." *Id.* ¶ 21.

On June 30, 2025, Plaintiff was handled improperly while being transported to Eddy Center. *Id.* ¶ 22. Correctional transport staff ordered van occupants who also were being released or transferred to lift Plaintiff into the transport van and to lower him upon arrival. *Id.* This process caused Plaintiff extreme pain. *Id.*

After arriving at Eddy Center, Plaintiff sat in the hallway for 12 hours and soiled himself several times because he could not access the bathrooms at Eddy Center, as it is not a wheelchair accessible facility. *Id.* ¶¶ 23–24. Parole Officer Norton advised Eddy Center Director that Plaintiff could stand up and transfer himself despite Plaintiff having used a wheelchair for the previous six months. *Id.* ¶ 24.

Around 11 pm that same evening, Plaintiff was transferred to Walter Brooks House and was forced by Parole Officer Norton to provide a state insurance card to pay for his transport. *Id.* ¶¶ 25, 27. Plaintiff was escorted to a non-handicap room which Officer Norton indicated would be his place of accommodation for that night only. *Id.* ¶ 27. The next morning, however, the Director of the Walter Brooks House advised Plaintiff he could not be moved to a handicap room as promised by Officer Norton. *Id.* ¶¶ 27–28.

While there, Plaintiff experienced increased pain and limited mobility due to the manner in which he was transported and the nature of the facilities. *Id.* ¶¶ 26, 30. He had limited bathroom access and could use the handicap bathroom only when available. *Id.* ¶ 30. As a result, Plaintiff often had to crawl into a narrow non-handicap bathroom in

his room, pull himself onto the toilet with no grab bars, and use the call button in case of an injury or emergency. *Id.* ¶¶ 26, 28. Plaintiff soiled himself on several occasions and experienced daily falls which exacerbated his pain and mobility issues and led to increased muscle spasms. *Id.* ¶¶ 26, 28, 30, 34, 35, 37–38, 40–46, 48.

Even worse, Walter Brooks staff often locked its wheelchair-accessible side entrance and left only the non-wheelchair-accessible backdoor unlocked. *Id.* ¶ 31. Staff maintained that locking the accessible side door is a "rule of the house." *Id.* As a result, Plaintiff was unable to reenter the house on several occasions after exiting for a smoke break, or for other reasons, because the door would lock upon his exit. *Id.* ¶¶ 32, 39, 41–44, 46, 47. At one point, the handicap bathroom was blocked with paint supplies; and even after staff partially removed the obstruction, Plaintiff could not access the sink. *Id.* ¶ 33. Staff laughed and dismissed his complaint. *Id.*

A few months later, Plaintiff arrived at Chase Center and moved into another ADA non-compliant room. *Id.* ¶ 49. While housed there, staff failed to provide Plaintiff with medication; searched his medical files, his room, and his person; forced him to provide a urine sample in a humiliating manner; denied him a library pass, computer access, and ability to print legal materials and mail; interfered with his medical transport; denied him a federal court pass; confiscated his phone and cigarettes; and only provided him partial access to the post office and Walmart. *Id.* ¶¶ 50–52, 54–63, 67–69, 72–77. Plaintiff also could not shower and was missing property, food, and bedding. *Id.* ¶ 51. Plaintiff's lack of access to a shower prevented him from being able to take a shower from the time of his arrival on October 1, 2025, until at least November 12, 2025; he was forced to wash himself by way of the sink, without any accommodations. *Id.* ¶ 50.

Plaintiff further contends he had trouble during transport, that staff ignored his wheelchair needs, that exits and entrances were not safe, and that he was still subject to inaccessible bathrooms, leading him to soil himself on several occasions. *Id.* ¶¶ 53, 64, 66, 71–72. He maintains that Chase Center staff took retaliatory adverse action, including failing to provide him with medication and imposing false misconduct reports because of his pending litigation activity. *Id.* ¶¶ 79, 84, 91.

Plaintiff also complains that female staff members entered his room without knocking, and that the Chase Director and staff entered his room without notice in violation of the PREA and federal law. *Id.* ¶¶ 70, 81, 85–86, 89–90.

## II. DISCUSSION

Plaintiff seeks various forms of relief. The court addresses each seriatim.

### A. Injunctive and Declaratory Relief

Plaintiff requests official capacity injunctive or declaratory relief to remedy alleged federal violations arising from his conditions at the Eddy Center, Walter Brooks House, and Chase Center. ECF No. 14-1, ¶ 116. These requests for relief are now moot because Plaintiff is no longer housed in these facilities as he has since transferred to the Chelsea Place Care Center, a skilled nursing facility. *See, e.g.*, *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (noting a plaintiff's transfer from a facility "generally moots claims for declaratory and injunctive relief against officials of that facility); *Giambalvo v. Suffolk County*, 155 F.4th 163, 179 (2d Cir. 2025) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380,

386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.")).[7]

The court dismisses Plaintiff's request for a declaration that Defendants engaged in unlawful conduct for the additional reason that "the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations, and ellipsis omitted). Here, if Plaintiff prevails on his Eighth Amendment, ADA, RA, and/or FHA claims, a judgment in his favor would serve the same purpose as a declaration of unlawful conduct. Thus, Plaintiff's request for declaratory relief is not distinct from the relief sought.

### B. Official Capacity Claims – DOC, HCC, and BOPP

The court next considers Plaintiff's claims for damages due to violations of his constitutional rights.

42 U.S.C. § 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

As a preliminary matter, Plaintiff may not proceed against DOC, HCC, or the BOPP under 42 U.S.C. § 1983 because the state, state agencies, and divisions of state agencies are not considered "persons" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within

[7] If Plaintiff seeks damages under 42 U.S.C. § 1983 against Defendants (who are all state employees) in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

meaning of 42 U.S.C. § 1983). Thus, Plaintiff's Section 1983 claims against DOC, HCC and BOPP are dismissed pursuant to 28 U.S.C. § 1915A.

**C. <u>Private Parties</u>**

Plaintiff also asserts this action under Section 1983 against Community Solutions, Inc., Chase Center, Project More, Inc., Walter Brooks House, Eddy Center, and their employees. These entities are halfway houses and agencies operating the transitional housing for Connecticut DOC parolees. *See* ECF No. 14-1, ¶¶ 5–6.

"The United States Constitution regulates only the Government, not private parties . . . ." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991). Thus, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (citation and quotation marks omitted). In certain circumstances, a private party can be considered a "state actor" if the alleged unconstitutional conduct is "fairly attributable to the state." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

But district courts within this District have almost uniformly held that a halfway house does not become a state actor even when it has entered into a contract with the state. *See* Gray *v. Project More, Inc.*, 469 F. Supp. 621, 629 (D. Conn.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979) (concluding affiliations with federal, state and local agencies, receipt of funds from the state pursuant to contract to provide services, and tax-exempt status do not render the action of the corporation state action); *see also Castelare v. Lopez*, No. 3:23-CV-1472 (KAD), 2024 WL 1157280, at *3 (D. Conn. Mar. 18, 2024) (holding that

although DOC may have referred plaintiff to the Sierra Center, neither Sierra Center nor its parent corporation is a state agency and employees are not state actors); *Williams v. Cook*, No. 3:20-CV-663 (AVC), 2020 WL 5649406, at *1 (D. Conn. Aug. 10, 2020) ("The fact that the Department of Correction has a contract with Isaiah House and Maple Street, to care for ex-offenders, does not make the facilities, or their employees, state actors . . . ." and noting the fact a halfway house was non-profit "support[ed] the fact that it is a private organization not subject to suit under section 1983."); *Martin v. Mejias*, No. 3:19-cv-1101 (KAD), 2019 WL 3457237, at *2 (D. Conn. July 31, 2019) (concluding "neither the Center nor its parent organization The Connection Inc. is a state agency and [its staff member] is therefore not a state actor."); *Awad v. Sierra Pre-Trial*, No. 3:18-cv-1506(JAM). 2019 WL 2437853, at *3 (D. Conn. June 11, 2019) (determining that neither the Sierra treatment program nor its employees were state actors to support a Section 1983 claim).

Consistent with this precedent, the court concludes that Plaintiff may not proceed against these private entities or their staff. Accordingly, all claims under Section 1983 against Community Solutions, Inc., Chase Center, Project More, Inc., Walter Brooks House, Eddy Center, and their employees and their staff are dismissed.[8]

The court now turns to consideration of Plaintiff's claims for damages against individual defendants who are state actors because they are DOC or BOPP employees.

**D. <u>John Doe Defendants</u>**

[8] Accordingly, the court dismisses Plaintiff's constitutional claims arising from halfway house or operating agency staff, including First Amendment retaliation, Fourth Amendment unreasonable search and seizure, privacy violations, deprivations of his constitutional right to access the courts, and interference with medical care, hygiene, and unsafe conditions or treatment. The court only considers Plaintiff's constitutional claims against or involving state actors.

Plaintiff alleges Defendants John Doe 1–20 "are staff, agents, or employees of the above entities, acting individually or in official capacities, whose identities will be revealed during discovery." ECF No. 14-1, at 3. Thus, the court considers whether Plaintiff has alleged any plausible damages claims against a DOC or BOPP employee.

A plaintiff seeking monetary damages from a defendant in their individual capacity must allege facts establishing personal involvement of that defendant in the particular alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). The personal involvement requirement pertains to supervisors, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

"As a corollary of the personal involvement requirement, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" *Gonzalez v. Yepes*, No. 3:19-CV000267 (CSH), 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (internal citation omitted). Plaintiff's Amended Complaint fails to provide facts to establish how any specific John Doe employed by DOC or BOPP participated in a violation of his constitutional rights. Because his Amended Complaint makes no substantive allegations against any John Doe defendants, the court dismisses without prejudice all claims against John Does 1–20, for lack of personal involvement.

**E. <u>Parole Officer Norton and Parole Supervisor Plourd</u>**

Plaintiff's Amended Complaint suggests that Parole Officer Norton and Parole Supervisor Plourd violated his Eighth Amendment rights.[9]

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). To state an Eighth Amendment deliberate indifference claim, an inmate must satisfy an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a sufficiently serious deprivation, such as the denial of life's necessities or a "substantial risk of serious harm." *Id.* at 834. To meet the subjective element, an inmate must allege that the prison officials possessed culpable intent, that is, that the officials knew that the inmate faced a substantial risk to his health or safety and that officials disregarded that risk by failing to take corrective action. *Id.* at 834, 837. Allegations of "mere negligence" are insufficient. *Id.* at 835. Rather, the subjective element requires a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Construed most favorably, Plaintiff's allegations suggest that he was exposed to a substantial risk of harm when he was transported to the Eddy Center and throughout his residential placements at the Walter Brooks House, Eddy Center, and Chase Center.

---

[9] Because Plaintiff is a special parolee, the court analyzes his deliberate indifference claim under the Eighth Amendment instead of the Fourteenth Amendment. *Young v. Parole Officer Pearson*, No. 3:24-CV-1028 (OAW), 2025 WL 3041800, at *3 n.3 (D. Conn. Oct. 31, 2025) (citing *Shabazz v. Sharr*, No. 3:19-CV-1233 (VLB), 2020 WL 646171, at *3 (D. Conn. Feb. 11, 2020) ("[P]ersons on special parole remain under the custody of the Department of Correction and, therefore, [their] claims are cognizable under the Eighth, not the Fourteenth, Amendment.")).

Thus, at this early stage in the proceeding, Plaintiff may proceed against Parole Officer Norton and Parole Supervisor Plourd for their deliberate indifference to Plaintiff's serious need for transportation services and residential facilities that accommodated his mobility limitations. *See Carmona v. Ct. Dep't of Corr.*, No. 3:23-CV-827 (SVN), 2023 WL 7016713, at *3 (D. Conn. Oct. 25, 2023) (plausible Eighth Amendment indifference on basis of plaintiff's inaccessible cell, showers, and recreation yard conditions "given that Plaintiff alleges he repeatedly requested accommodations from these Defendants but was ignored"); *Lenti v. Connecticut*, No. 3:20-cv-127 (SRU), 2020 WL 2079462, at *5 (D. Conn. Apr. 30, 2020) (concluding on initial review that Plaintiff had alleged plausible Eighth Amendment claim based on serious risk to his safety due to inaccessible conditions of his cell and his lack of a wheelchair).

Accordingly, Plaintiff may proceed on his Eighth Amendment claim against Parole Officer Norton and Parole Supervisor Plourd in their individual capacities.

**F. ADA**

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84–85 (2d Cir. 2004), corrected, 511 F.3d 238 (2d Cir. 2004). Title II applies to any state or local government or instrumentality of a state or local government. 42 U.S.C. § 12131(1). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff does not specify the defendants against whom he asserts his ADA claim. The court construes Plaintiff's Amended Complaint to bring ADA claims against state agencies

DOC and BOPP, and Parole Officer Norton and Parole Supervisor Plourd in their official and individual capacities.

To state a cognizable ADA claim, Plaintiff must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) Defendants are an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). "A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Lenti v. Connecticut*, No. 3:20-cv-127(SRU), 2020 WL 427500, at *8 (D. Conn. July 24, 2020) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted)).

For purposes of initial review, the court considers Plaintiff an individual with a qualifying disability who requires accommodation for his physical disability since he uses "a power wheelchair."[10] ECF No. 14-1, ¶ 4. *See Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 2079462, at *3 (D. Conn. Apr. 30, 2020) (presuming, at initial review, that plaintiff "is a qualified individual whose back injury substantially limits him in his major life activities of ambulating, standing, sitting, and caring for himself.").

[10] The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Furthermore, construed favorably, Plaintiff's Amended Complaint supports a claim he was deprived of reasonable accommodations during his transport to the Eddy Center and throughout his placements at Eddy Center, Walter Brooks House, and Chase Center. Accordingly, he has sufficiently alleged an ADA claim under a failure to provide reasonable accommodation theory[11] such that he may proceed on an ADA claim under a reasonable accommodation theory against DOC, BOPP, Parole Officer Norton, and Parole Supervisor Plourd. However, Plaintiff cannot proceed for injunctive or declaratory relief via ADA violation arising from the conditions at Eddy Center, Walter Brooks House or Chase Center, where he is no longer housed. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility . . . .").

At this early stage of litigation, it remains unclear whether Plaintiff will be able to state a claim against the individual defendants in their official capacities for damages under Title II of the ADA. *See Sanchez v. Mulligan*, No. 22-2923, 2024 WL 2890742, at *3 (2d Cir. 2024) (summary order) (noting that damages may be appropriate against state official in official capacity on ADA claim if alleged conduct also violated the Fourteenth Amendment). However, the court permits Plaintiff to proceed for further development of

[11] Although his allegations indicate harsh treatment at the residential placements, Plaintiff has not alleged facts to support an ADA claim of intentional discrimination under the disparate treatment theory. "Courts routinely dismiss ADA suits brought by disabled inmates" which "do not allege" the incarcerated person "was treated differently because of" their "disability." *Ramrattan v. New York*, No. 9:22-CV-00025 (AJB/MJK), 2025 WL 2549075, at *9 (N.D.N.Y. July 9, 2025), *report and recommendation adopted sub nom. Ramrattan v. Guzman*, No. 9:22-CV-25 (AJB/MJK), 2025 WL 2315310 (N.D.N.Y. Aug. 12, 2025).

the law and the record on his Title II ADA damages claims against DOC and BOPP, and against Parole Officer Norton and Parole Supervisor Plourd in their official capacities.

**G. Rehabilitation Act**

To state a claim under Section 504 of the Rehabilitation Act ("RA"), a plaintiff must allege that he "(1) is a 'handicapped person' as defined by the Rehabilitation Act, (2) is 'otherwise qualified' to participate in the offered activity or benefit; (3) was excluded from such participation solely by reason of h[is] handicap; and (4) was denied participation in a program that receives federal funds." *Biondo v. Kaleida Health*, 935 F.3d 68, 73 (2d Cir. 2019) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)). Plaintiff asserts his RA claim against DOC, BOPP, Community Solutions, Inc., Project More, Inc., Eddy Center, Walter Brooks House, and Chase Center. ECF No. 14-1, at 24. He alleges that these entities all receive federal funding. *Id.* For purposes of initial review only, the court considers these defendants—or at least the relevant parent agency—to be plausible defendants under the RA. *See, e.g., Bradley v. Hain*, No. 23 C 5020, 2024 WL 4753688, at *6 (N.D. Ill. Nov. 8, 2024) (noting pretrial detainee-plaintiff "must allege that Wellpath receives federal funds" for RA claim).

The United States Court of Appeals for the Second Circuit has noted that "the standards under both [the ADA and RA] are generally the same[.]" *Wright N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Where, as here, any subtle distinctions between the statutes are not implicated, courts "treat claims under the two statutes identically." *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). Thus, on the same grounds explained above, Plaintiff may proceed on his RA claims

against DOC, BOPP, Community Solutions, Inc., Project More, Inc., Eddy Center, Walter Brooks House, and Chase Center (or the relevant parent agency) for damages.

## III. <u>ORDERS</u>

For the foregoing reasons, the court orders as follows:

1. This action may proceed on the following claims:
   a. Eighth Amendment deliberate indifference against Parole Officer Norton and Parole Supervisor Plourd in their individual capacities for damages;
   b. Title II ADA violation under a reasonable accommodation theory against the DOC, BOPP, Parole Officer Norton, and Parole Supervisor Plourd in their official capacities for damages; and
   c. Rehabilitation Act violation under a reasonable accommodation theory against DOC, BOPP, Community Solutions, Inc., Project More, Inc., Eddy Center, Walter Brooks House, and Chase Center (or the relevant parent agency) for damages.
2. All other federal claims are DISMISSED.
3. **Plaintiff has two options as to how to proceed in response to this Initial Review Order:**
   **a.** If Plaintiff wishes to proceed immediately **only** on the claims set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **<u>November 29, 2026</u>,** informing the court that he elects to proceed

with service as to the claims set forth above.

b. Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his operative Amended Complaint that have been dismissed in order to attempt to state a viable claim, he shall file another amended complaint on or before **November 29, 2026**. **Any newly-filed amended complaint, if filed, will completely replace the operative Amended Complaint, and the court will not consider any allegations made in the original complaint or prior amended complaint in evaluating the newly-filed amended complaint.** The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the operative Amended Complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

4. If the court receives no response from Plaintiff by **November 29, 2026,** the court will presume that Plaintiff wishes to proceed on the operative Amended Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend his operative Amended Complaint in any manner in the future.

5. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d) provides that he **MUST** notify the court. Failure

to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

6. Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of October, 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE